## In re MAYER.

### (District Court, E. D. Wisconsin. May 14, 1900.)

**1. BANKRUPTCY—FEES AND COSTS—ATTORNEY'S FEE.**

The fact that a bankrupt has disobeyed an order of the court requiring the payment of money to his trustee, and has fled the jurisdiction, and is in contempt, will not prevent the allowance out of the estate of a proper fee to his attorneys for professional services rendered to the bankrupt in the course of the proceedings before the occurrence of the contempt; such misconduct on the part of the bankrupt being without their privity or complicity.

**2. SAME—WHAT SERVICES INCLUDED.**

Under Bankr. Act 1898, § 64b, subd. 3, providing for the allowance out of an estate in bankruptcy of a "reasonable attorney's fee, for professional services actually rendered * * * to the bankrupt in involuntary cases while performing the duties herein prescribed," the allowance must be restricted to compensation for services rendered to the bankrupt in the preparation of schedules, attendance at examinations, and other duties in aid of the estate and its administration. It should not include a fee for defending the bankrupt against charges of fraud or concealment of assets, or other matters involving his personal liability, civil or criminal, whether such charges grow out of the examination or otherwise, nor a general retainer in behalf of the bankrupt.

**3. SAME—PREPARATION OF SCHEDULES.**

In cases of involuntary bankruptcy, the services of the bankrupt's attorney in preparing the schedules required by the act may be compensated by a fee, payable out of the estate, varying in amount from $25 to $50, according to the extent of the work involved.

**4. SAME—ATTENDING EXAMINATIONS.**

For services rendered to an involuntary bankrupt while undergoing his examination before the referee, his attorney may be allowed a fee of $25 for each day actually occupied in such examination, provided there are no unnecessary delays or adjournments caused by the conduct of the bankrupt himself in the examination.

In Bankruptcy. On an application by attorneys for the bankrupt for allowance of a bill of fees for services rendered on behalf of the bankrupt in the course of the proceedings, amounting to $1,635, as itemized for retainer and per diem charges.

The referee certifies that the bankrupt has disobeyed the order of the court requiring payment of certain funds withheld from the trustee, has absconded, and stands adjudged in contempt. The questions certified thereupon are: (1) Can the claim for attorney's fees be considered while the bankrupt so remains in contempt? (2) If open to consideration, what services may be included in an allowance? (3) For what amount, under the circumstances stated? See (D. C.) 97 Fed. 328; (D. C.) 98 Fed. 839.

Timlin & Glicksman and Charles F. A. Groth, for bankrupt.
Bloodgood, Kemper & Bloodgood, for trustee.

SEAMAN, District Judge. This inquiry, which calls for an interpretation of the act in reference to allowances for attorney fees, is of special importance in its bearings upon other cases in this district, and I have given careful consideration to the matters submitted by the referee. The following conclusions are certified thereupon:

1. The bankrupt is in contempt, and clearly cannot move the court for any matter of indulgence until he has cleared his contempt. Hovey v. Elliott, 167 U. S. 409, 436, 17 Sup. Ct. 841, 42 L. Ed. 215.

Whether this general rule would exclude him from invoking subsequently the benefits secured by statute of an allowance for his attorney is a question not presented on this record, for the reason that the application was made and the attorney's services were rendered before the occurrence of the contempt; and it is undoubted, both from the circumstances of the case and the reputation of his attorneys at this bar, that they were in no manner privy to the disobedience of the final order of the court. To the extent that such services were rendered within the intent of the statute, the subsequent misconduct of the bankrupt, without fault on the part of the attorneys, cannot serve to preclude the allowance of a fee.

2. The question of the extent of services for which such allowance is contemplated by the statute arises out of the provision in section 64b, under the head of "Debts Which Have Priority," that "costs of administration shall be paid," including "one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, * * * to the bankrupt in involuntary cases while performing the duties herein prescribed." The guarded language of this allowance and of the cognate provisions must be interpreted in the light of the intent manifested throughout the act to secure rigid economy in administering the estate in bankruptcy, and save to the creditors a considerable portion which was otherwise liable to be swallowed up in expenses,—a feature in which the former acts were found defective. The claimants urge that the grant of attorney's fees out of the estate is exclusively for the benefit and protection of the bankrupt, without regard to any benefit to the creditors; that it is made a matter of right, founded on the presumption of his surrender of all his possessions as demanded by the act, and on the equity of having any necessary services of an attorney in the course of the proceedings borne by the estate thus surrendered. If such interpretation is adopted, it would seem that no inquiry need be made in this case beyond that of the reasonableness of the claims presented, all being charged for one attorney. Both the fact and the need of able counsel to defend the bankrupt on serious charges of fraudulent conduct and concealment of property appear in this record and have otherwise come to the knowledge of the court. Even the disclosure in such proceedings of property, largely in excess of the claims in question, withheld and concealed by the bankrupt, and under his control, cannot serve to defeat the allowance, if it rests on statutory right and not in judicial discretion, aside from the measure of allowance.

I am of opinion, however, that the terms of the provision for the services of an attorney "to the bankrupt in involuntary cases while performing the duties herein prescribed" are thus limited in strict accord with the general tenor and spirit of the enactment, and neither express nor intend an allowance for the defense of the bankrupt through the course of the proceedings in matters involving his personal liability, civil or criminal. The duties to be performed by the bankrupt in the proceedings are prescribed in section 7, and all relate to attendance and services of presumptive benefit to the estate, with the possible exception of attending at "the hearing upon his applica-

tion for a discharge." The preparation of schedules by the bankrupt in involuntary cases, and his attendance on compulsory examinations before the referee, are matters in discharge of his duty, for the benefit of the estate, and each may require the services of an attorney, for which the estate thus receiving the benefit is chargeable for reasonable compensation; but, in conformity with the purposes of the act, the allowance must be made "sparingly and with great caution." In re Kross (D. C.) 96 Fed. 816, 819. When the examination involves the prior transactions and conduct of the bankrupt, he is entitled to allowance for the services of counsel therein to the extent only of saving and protecting his rights on the inquiries so made, and not for subsequent services in his defense, whether they arise out of such examination or otherwise. The test for compensation out of the estate is whether the service is rendered in the performance of the bankrupt's duty in aid of the estate and its administration, and not whether the bankrupt stands in need of the service of counsel for his personal benefit and protection in any of the proceedings. No sanction appears in any of the provisions for an allowance in the last-mentioned view, and its adoption would violate the general consistency of the act for securing economy in administration. Indeed, the policy of compensating counsel assigned by the courts to aid needy defendants in criminal prosecutions has never been adopted by congress, and it would seem anomalous to impose the burden of such defense of a bankrupt on the creditors. The opinion recently handed down in the circuit court of appeals for this circuit (In re Curtis, 100 Fed. 784) is well in point. both for a general rule of construction to be applied to the act in reference to expenses and for its interpretation of the analogous allowance in the same connection of an attorney's fee to the petitioning creditors in involuntary cases. It is held to be limited strictly "to the service rendered in procuring the adjudication." On the construction indicated, the services rendered in preparing the schedules, and in attendance on the examination of the bankrupt before the referee pursuant to the order, are entitled to an allowance. All other claims are rejected, including that for "retainer."

3. The inquiry as to the amount to be allowed for items of service so approved cannot be definitely answered, for want of specific information of the extent and circumstances of the service; but the statement of a general rule for measuring the allowance will serve for an adjustment by the referee. (1) It is certified by the referee that his customary allowance for service in drafting schedules is from $25 to $50, according to the extent. This work is mainly clerical, and the practice in that regard is approved. (2) As indicated above, I am of opinion that the bankrupt is entitled to counsel while undergoing his examination before the referee in respect of his affairs and conduct. Ordinarily this should not require attendance on more than one or two days. If extended, however, at the instance of the creditors or trustee, without delay needlessly caused by the conduct of the bankrupt in the examination, the time so occupied must be computed in making the allowance. The examinations should be conducted with reasonable dispatch, and without unnecessary adjournments; and if, in any case, there is procrastination or prolixity on

the part of the moving parties, the increased expense must be borne by the estate represented. The number of days of actual service within this view will be determined by the referee, and thereupon a per diem allowance of $25, as charged in the statement filed herein, is deemed reasonable, and in accord with the views expressed in Re Curtis, supra.